IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BIN HAO,                                    )
                                            )
        Appellant,                          )
                                            )
        v.                                  )        No. 1:23-cv-708 (RDA/LRV)
                                            )
GERARD R. VETTER,                           )
Acting United States Trustee for Region 4, )
                                            )
        Appellee.                           )

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Appellant Bin Hao's ("Appellant") appeal from the Amended Order of the United States Bankruptcy Court for the Eastern District of Virginia granting in part and denying in part the United States Trustee's motion for summary judgment in the adversary proceeding, *Fitzgerald v. Hao*, No. 22-ap-1095 (Bankr. E.D. Va.). Dkt. 1.[1]  The Court dispenses with oral argument because it would not aid in the decisional process. Loc. Civ. R. 7(J); Fed. R. Civ. P. 78.[2]  Accordingly, this matter is now fully briefed and ripe for decision.

---

[1] Neither party cites to the records filed in this case at docket entry 5. Rather, the United States Trustee provided and cites to an appendix of the records relevant to this appeal, which contain a "UST_" bates-stamp number (Dkt. 10-1), and Appellant cites to the original bankruptcy docket numbers. For ease of reference and to correspond with the arguments made in the briefs, the Court will, where appropriate, refer to the UST page numbers. The Amended Order and relevant Amended Memorandum Opinion can be found at UST443-44 ("Bankruptcy Order") and UST423-42 ("Bankruptcy Opinion").

[2] The Court notes that Appellant specifically sought oral argument on the basis that it would permit "rigorous examination of the parties' contentions." Dkt. 9 at 7. Despite his request for oral argument, Appellant chose not to file a reply brief. Based upon the parties' submissions and the fact that Appellant did not feel that the issues presented in the briefing warranted filing a reply, the Court does not find that oral argument would not aid the decisional process.

Considering the record (Dkt. Nos. 5, 5-1 through 5-18, 6, 7), Appellant's Brief (Dkt. 9) and Appellee United States Trustee for Region IV's ("Appellee") Brief (Dkt. 9),[3] this Court hereby AFFIRMS the judgment of the Bankruptcy Court for the reasons that follow.

## I. BACKGROUND

Appellant has two master's degrees, one in aerospace engineering and one in business administration. UST320. Appellant also previously worked as a licensed real estate agent and worked for a hedge fund trading on futures commodity contracts. *Id*. Prior to filing for bankruptcy, Appellant was the sole managing member and person in control of Qidian, LLC. UST169, 292, 295, 416. Appellant created Qidian, controlled its bank accounts, and directed its investments. UST292, 294-95, 328.

According to Appellant, Qidian managed a number of special purpose vehicles ("SPVs"), which Appellant also created. UST292-95; Dkt. 9 at 5.[4] The SPVs were formed to make mezzanine funding loans available to various real estate projects. UST253-54, 404, 416; Dkt. 9 at 5. Appellant testified: "The purpose of SPVs is to collect investment funds from each individual investors [sic] specific to that project and then pass funds to the developer's matching entities." UST294. Between 2016 and 2020, Appellant obtained investments for his SPVs of over $40,000,000. UST140 (bankruptcy schedule calculating the "nonpriority unsecured claims"); Dkt. 9 at 5 (acknowledging that "Qidian collected quite a bit of money"). As Appellant acknowledged,

---

[3] As both parties recognize, on July 1, 2023, the named Plaintiff – John P. Fitzgerald, III – retired on July 1, 2023 and Gerald R. Vetter replaced him as the acting U.S. Trustee for Region 4. For purposes of this Memorandum Opinion, the Court will simply refer to the "United States Trustee" or Appellee. Dkt. 10 at 1 n.1.

[4] References to the page numbers within the briefs refer to the page numbers on the bottom of the page, rather than the ECF-assigned page numbers.

sometimes the funds were deposited into the SPVs' bank accounts and at other times the funds were deposited into Qidian's bank accounts.  UST294-95.

On April 20, 2022, Appellant filed a Chapter 11, subchapter V, bankruptcy case.  UST43. As of the date of the filing, Appellant reported having no real estate, no automobiles, $5,500 in household goods, and $100,140 in financing assets, for a total of $105,640 in assets.  UST178-83. While the case was in Chapter 11, there were five meetings of creditors conducted pursuant to 11 U.S.C. § 341.  UST2-10.  During those meetings, the subchapter V trustee, Angela Shortall, sought information from Appellant and his counsel regarding Appellant's financial affairs and business dealings.  UST393.  Ms. Shortall believed that she never received an adequate explanation from Appellant regarding his financial transactions or what happened to the money he solicited from the entities that he managed and controlled.  UST393-94.

Appellant proposed a Chapter 11 plan.  UST12.  Although Appellant's amended bankruptcy schedules recognized that the unsecured claims against him totaled $41,197,667.11 (UST63-140), the proposed Plan would provide an approximate total of $31,000 to those unsecured creditors (UST381).

On September 7, 2022, after an evidentiary hearing, Bankruptcy Judge Brian F. Kenney granted the United States Trustee's motion to convert Appellant's Chapter 11 bankruptcy into a Chapter 7 bankruptcy.  UST391.  In connection with this ruling, Judge Kenney made findings of fact and conclusions of law.  UST376-91.  The parties both draw attention to Judge Kenney's finding that: "The largest of the SPV's invested in a real estate project in Miami, which suffered a foreclosure on its property by the senior mortgage lender, resulting in a loss of the SPV investors' money."  UST377.  In determining that the case should be converted to a Chapter 7 bankruptcy, Judge Kenney found that Appellant acted in bad faith, including: (i) failure to timely and accurately

3

disclose his assets; (ii) failure to pay domestic support obligations; and (iii) failure to disclose transfers.  UST386.  On this final point, Judge Kenney commented that he had "no confidence that the Debtor's filings are accurate and complete."  *Id.*  Judge Kenney further found that "there is a continuing loss to, or diminution of, the bankruptcy estate" based on Appellant's accrual of fees that he had no ability to pay.  UST387.  Finally, Judge Kenney found that Appellant's proposed Plan was not feasible and that he failed to meet the good faith requirement for confirmation because "[t]he proposed distribution to the unsecured creditors is so *de minimis* that it can accurately be described as meaningless."  UST388-89.  Appellant did not appeal that ruling.

Upon conversion, Janet Meiburger was appointed as Chapter 7 trustee.  UST22 (reflecting Ms. Meiburger's appointment at entry 258).  After her appointment, Ms. Meiburger conducted four additional meetings of creditors under 11 U.S.C. §§ 341, 343.  UST396.  During those meetings, Appellant testified under oath.  *Id.*  Ms. Meiburger found Appellant's answer to her questions "vague and evasive" and she asserts that she was unable to "develop an accurate picture of [Appellant's] finances."  UST396-97.

On November 11, 2022, the United States Trustee filed an adversary proceeding against Appellant and sought, in a three-count complaint, to deny Appellant a Chapter 7 discharge. UST193-214.  Count I asserted that Appellant failed to keep or preserve information from which his financial transactions could be ascertained.  UST193, 212-13.  Count II asserted that Appellant made fraudulent and false statements under oath.  UST193, 213.  Finally, Count III asserted that Appellant's discharge should be denied due to his failure to satisfactorily explain the loss or deficiency of assets to meet his liabilities.  UST193, 213-14.  Specifically, the complaint alleged: "The Debtor received, directly or indirectly, through entities he organized, controlled, and managed, millions of dollars in loans/investments and has not and cannot explain satisfactorily the

4

loss of millions of dollars loaned or invested to entities under his control and management." UST214.

The United States Trustee later moved for summary judgment on all three counts. UST215-397. Among other evidence, the United States Trustee submitted declarations from Ms. Shortall and Ms. Meiburger describing their efforts to obtain financial information from Appellant. In response to the motion, Appellant argued that he had not lost any assets and submitted his own affidavit in support. UST402-418. Specifically, Appellant argued: "Every dollar received by Qidian and these SPV's is reflected in the banking records of Qidian and these SPV's. Every dollar Qidian and these SPV's paid out is reflected in the banking records of Qidian and these SPV's." UST412. Appellant's declaration also asserted that he maintained and continues to hold those records. UST416. Appellant asserted that he had not submitted those records because he had "no duty under the Bankruptcy Code to explain what the developers did with the money they received" and because he was not specifically asked for the financial records. UST412.

In addition to his opposition, Appellant also moved to strike the declarations of Ms. Shortall and Ms. Meiburger. UST398-401. Appellant argued that the declarations were not in the proper form and that they lacked necessary statements that the declarations were under oath and that the declarants were competent to testify. *Id*. He also argued more generally that the declarations were not admissible evidence. UST399. Judge Kenney rejected Appellant's arguments and denied the motion to strike. UST459.

At a hearing on the motion for summary judgment, Appellant argued that a bankrupt Florida entity, known as Metronomics, owed Qidian between $35 and $36 million. UST480-81. Counsel for Appellant also conceded that the United States Trustee does not "know what happened to the assets because they don't have the baseline information to show what, in fact, happened."

5

UST487.  Nonetheless, counsel argued that "the greater part of what Mr. Frankel claims has been lost is all the money that passed through the Qidian accounts to Metronomics."  *Id.*

Judge Kenney then issued an opinion granting in part and denying in part the motion for summary judgment.  Judge Kenney denied the motion with respect to Count I, failure to keep and preserve records, because he found that there were disputed issues of fact regarding what documents had been requested.  UST434.  Judge Kenney also denied the motion with respect to Count II, fraudulent statements, because he found that there were disputed issues of fact regarding Appellant's intent.  UST437.  Judge Kenney granted the motion, however, with respect to Count III, failure to explain a loss or deficiency, because the United States Trustee "met his burden to demonstrate that there has been an unexplained loss of assets of a deficiency in assets to meet the Debtor's liabilities."  UST438.  Judge Kenney noted that Appellant, "by his own account, solicited millions of dollars from the investors and put the money into various SPV's" and that "[t]he Debtor, Qidian, and the SPV's were in possession of these funds at one time," but by the time Appellant filed for bankruptcy "not a dime was left in a single bank account."  *Id.*

Judge Kenney found that Appellant had not explained that loss because "[h]is only explanation" is to point to Metronomics, but "[n]ot all of the investors' money went into the Metronomics project."  *Id.*  Moreover, Judge Kenney found Appellant's explanation "vague" because Appellant failed to explain "how much was invested in Metronomics, when it was invested, and what returns if any were paid to Qidian or the SPV's during the life of the project."  UST439.  Indeed, Judge Kenney noted that Metronomics – in its own bankruptcy – listed the amount owed to Qidian as $51 million and stated that "[t]he Court has no idea which of these numbers is closer to the actual amount of lost investments in Metronomics."  *Id.*  Judge Kenney also noted that, in another adversary proceeding brought by a creditor, Appellant refused, on Fifth

Amendment grounds, "to answer any questions related to the use of the investors' funds to pay other investors." UST439-40. Judge Kenney stated that, such refusal was "hardly indicative of a willingness on his part to explain to the creditors what happened to their money." UST440. Finally, Judge Kenney noted that, after nine meetings of the creditors, he still did not have a "clear picture" of Appellant's finances or the "use and disposition of millions of dollars" such that "there is no genuine dispute that [Appellant] has failed to satisfactorily explain the loss of his assets or the deficiency of his assets to meet his liabilities." *Id.*

After Judge Kenney issued his original opinion, he entered the Bankruptcy Opinion and Bankruptcy Order to correct a clerical error. This appeal followed. On May 31, 2023, Appellant noticed his appeal. Dkt. 1. On June 21, 2023, a briefing schedule issued. Dkt. 4. On June 22, 2023, the record was filed. Dkt. Nos. 5, 5-1 through 5-18, 6, 7. On August 5, 2023, Appellant filed his opening brief. Dkt. 9. On August 28, 2023, the United States Trustee filed its brief. Appellant did not file a reply.

## II. STANDARD OF REVIEW

"When reviewing a decision of the Bankruptcy Court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526-27 (E.D. Va. 2010) (citation omitted). Thus, the district court reviews questions of fact under the "clearly erroneous" standard. *Id.* "The clear error standard requires 'a reviewing court [to] ask whether on the entire evidence, it is 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Span*, 789 F.3d 320, 325 (4th Cir. 2015) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). Legal conclusions are reviewed *de novo*. *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). In cases where the issues present mixed questions of law and fact, the

Court deploys "a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining *de novo* the legal conclusions derived from those facts." *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996) (citation omitted).  Decisions based on the discretion of the Bankruptcy Court are reviewed for abuse of discretion. *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992).

## III. ANALYSIS

To begin with, there is some confusion as to what issues Appellant is appealing. Appellant's brief contains an "Issues Presented" subsection and a "Questions Presented" subsection, but the two subsections do not correspond to one another.  Construing the issues raised in the light most favorable to Appellant, this Court will review both of the "Issues Presented" by Appellant: (i) whether the Bankruptcy Court appropriately denied the motion to strike the Shortall and Meiburger declarations; and (ii) whether there was a genuine issue of fact that precluded the entry of summary judgment in favor of the United States Trustee.  Dkt. 9.  Because the Bankruptcy Court appropriately denied the motion to strike and because there were no genuine disputes of material fact, this Court will Affirm the decision of the Bankruptcy Court in the Bankruptcy Order and Bankruptcy Opinion.

### A.  The Motion to Strike

On appeal, motions to strike are reviewed under an abuse of discretion standard. *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 246 (4th Cir. 2007).  Appellant argues that the Bankruptcy Court erred in considering the Trustee Declarations because: (i) the declarations are not based upon personal knowledge and do not reflect competent evidence; (ii) the declarations do not comply with Federal Rule of Evidence 603; and (iii) the declarations are inadmissible.  Dkt. 9 at 3.  The Court reviews each of these arguments individually.

*i. Personal Knowledge and Competency to Testify*

Appellant's brief generally notes that an affidavit or declaration in support of summary judgment is required to be made based upon personal knowledge and by a person competent to testify. Dkt. 9 at 3. Nowhere in his brief, however, does Appellant identify any specific deficiency with respect to the two declarations that he challenges. *Id*. As the United States Trustee appropriately notes, such "perfunctory and underdeveloped arguments . . . are waived." Dkt. 10 at 31 (citing *Steve & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021)).

Nonetheless, a review of Appellant's arguments before the Bankruptcy Court reveals that Appellant challenged the declarations on the basis that they did "not state that [they were] made on personal knowledge or that the declarant is competent to testify." UST398-99. The Fourth Circuit has rejected this argument. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 n. 9 (4th Cir. 2002). The Fourth Circuit has found a basis for personal knowledge where an affidavit "contain[s] sufficient information, including a description of the affiants' job titles and duties, to establish that the affiants' statements were based on personal knowledge." *Id*. Moreover, the Fourth Circuit also held that, "[i]n the absence of evidence from Bryant that each of Bell Atlantic's affiants were not competent to testify, we assume that they were." *Id*. In other words, "[t]here is no requirement [that] affidavits specifically state they are based on personal knowledge when these requirements are met." *Sanchez Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 141 (D. Md. 2019). Here, the Trustee Declarations provide sufficient information about Ms. Shortall's and Ms. Meiburger's backgrounds and positions as trustees as well as their interactions with Appellants for the Bankruptcy Court to accept that the declarations were based on personal knowledge. UST392-97; UST459. Moreover, as in the *Bryant* case, in the absence of any specific competency challenge,

it was appropriate for the Bankruptcy Court to assume the competency of Ms. Shortall and Ms. Meiburger.  Accordingly, the Bankruptcy Court did not abuse its discretion in this regard.

*ii. Rule 603*

Appellant fares little better when he argues that the Trustee Declarations failed to comply with Rule 603.  Indeed, Appellant's entire argument in this regard consists of two conclusory statements: "Neither the Meiburger nor the Shortall Declaration complies with F.R.E. 603.  There is no statement within these documents through which compliance with F.R.E. 603 can be found." Dkt. 9 at 3.  Again, this perfunctory summary waives Appellant's argument.  *Steve & Sons*, 988 F.3d at 727.

Rule 603 requires that, "[b]efore testifying, a witness must give an oath or affirmation to testify truthfully" in a form "designed to impress that duty on the witness's conscience."  Fed. R. Evid. 603.  Here, the Meiburger Declaration states that she, "being first duly sworn, deposes and says as follows" and the declaration is also notarized and contains the affirmation from the notary that the declaration was "SUBSCRIBED AND SWORN TO before me."  UST395; UST397.[5]  The Shortall Declaration provides that she "hereby affirms, under penalty of perjury, the following." UST392.[6]  Appellant does not state why these statements are insufficient to comply with Rule 603. The Bankruptcy Court found that they were "proper as to form" as both declarations were "sworn to under penalty of perjury."  UST459.  Other courts have rejected out of hand similar objections to declarations sworn to under penalty of perjury.  *See, e.g., First State Ins. Co. v. Hill Bros. Chemical Co.*, 2011 WL 13225116, at *2 (C.D. Cal. Dec. 5, 2011) (overruling similar objection,

---

[5] As the United States Trustee correctly notes, under Virginia law, notary publics are authorized to administer oaths and affirmations.  Va. Code § 47.1-12.

[6] The declaration complies with 28 U.S.C. § 1746 because it provides that it was subscribed to "under penalty of perjury."

describing objections as "particularly poor"); *Nelson v. Fluropharma Medical, Inc.*, 2016 WL 53825, at *4 (D. Nev. Jan. 4, 2016) (overruling objection and noting that "Rule 603 requires 'no special verbal formula'"). Accordingly, the Bankruptcy Court did not abuse its discretion in denying the motion to strike on this basis.

### iii. *Admissibility of Testimony*

Appellant's arguments regarding the inadmissibility of certain testimony are even less availing. Rather than set forth the specific paragraphs of the Trustee Declarations that Appellant challenges, Appellant merely incorporates by reference his arguments before the Bankruptcy Court. Dkt. 9 at 3-4.[7] As the Fourth Circuit has recently reiterated, "[t]he practice of incorporating documents by reference 'at best betrays sloth'" and "need not be considered on appeal." *Adv. Training Grp. Worldwide, Inc. v. Pro-Active Tech., Inc.*, 2023 WL 8945846, at *5 n. 2 (4th Cir. Dec. 28, 2023); *see also Ehrlich for Hoffmans Trade Grp. LLC v. Commercial Factors of Atlanta*, 567 B.R. 684, 692 (N.D.N.Y. 2017) ("[A] bankruptcy appellant cannot raise an issue for appellate review 'merely [by] incorporating by reference an argument presented to the [bankruptcy court].'"). Thus, the Court need not consider any of the arguments raised by Appellant in this regard.

In denying the motion to strike, the Bankruptcy Court found that it is "perfectly proper" for the Trustee Declarations to state, "in effect, we requested information; this is a complicated case; we had four or five meetings of creditors; we were continually requesting information; at the end of the day we were not provided with the information that would have enabled us to reconstruct

---

[7] Appellant asserts that "Ms. Meiburger would not be permitted to testify in the form of the matters identified in ¶¶ 3-5 of Docket Entry 12, and Ms. Shortall would not be permitted to testify in the form of the matters identified in ¶¶ 7-9 of Docket Entry 12." Dkt. 9 at 3. Although at first blush it appears that Appellant is referencing specific paragraphs of the Trustee Declarations, this is not the case. Rather, Appellant is citing to his own Motion to Strike and the paragraphs in which he makes certain arguments attacking the Trustee Declarations. UST399.

the debtor's financial affairs."   UST459.   In many respects, Appellant's challenges to the declarations are nonsensical.  UST399 (challenging paragraphs 2-4 in the Shortall Declaration in which Ms. Shortall recites her education and qualifications).   In other respects, the challenges manifest a misunderstanding of the operation of hearsay rules.  *Id*. (challenging paragraph 13 of the Shortall Declaration in which Ms. Shortall recites what she did – make a request for information – and why she thought that information was important).   Appellant cites no specific Rules, case authority, or other authority that would support his arguments.  Accordingly, this Court finds that, in denying the motion to strike, the Bankruptcy Court did not abuse its discretion.

### B.   The Motion for Summary Judgment

The Court next turns to Appellant's argument that the Bankruptcy Court improperly entered summary judgment in favor of the United States Trustee.  An order granting summary judgment is a legal conclusion subject to *de novo* review.  *Nader v. Blair*, 549 F.3d 953, 958 (4th Cir.2008).  In support of his appeal, Appellant argues that there were disputed factual contentions that precluded summary judgment.  This argument fails.

Although Appellant does not clearly set forth what disputes of fact he contends exist, Appellant's brief suggests that there are two: (i) whether there was an unexplained loss of assets; and (ii) whether the United States Trustee ever asked Appellant for information that was not provided.  Dkt. 9 at 6-7.

To begin with, it is helpful to recite the legal background against which these allegedly disputed facts were being considered.  The only count at issue on appeal is the Bankruptcy Court's grant of summary judgment on Count III, wherein the United States Trustee sought to deny Appellant a discharge based upon his failure to provide a satisfactory explanation for missing assets under 11 U.S.C. § 727(a)(5).  The parties agree that a Chapter 7 discharge should not be

granted if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). As the Fourth Circuit has recognized, "[s]ection 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 250 n.18 (4th Cir. 1994) (quoting *In re Martin*, 698 F.2d 883, 886 (7th Cir. 1983)); *see also Powers v. Ottoson–King (In re Ottoson– King)*, 3 F. App'x 147, 151 (4th Cir. 2001) (same).

"In a proceeding involving Section 727(a)(5), the initial burden is on the party objecting to a discharge to produce evidence establishing the basis for his objection." *Ottoson–King*, 3 F. App'x at 151 (quoting *In re Farouki*, 133 B.R. 769, 777 (Bankr. E.D. Va. 1991), *aff'd sub nom. Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244 (4th Cir. 1994)). The plaintiff satisfies this burden by "showing that the debtor at one time had the assets but they are no longer available for the debtor's creditors." *PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 116 (Bankr. W.D. Pa. 2000) (internal quotation marks omitted). Thus, here, the burden on the United States Trustee was only to "identify missing assets." *Ottoson-King*, 3 F. App'x at 151. Once the objecting party meets his initial burden to identify missing assets, "the burden shifts to the debtor to explain satisfactorily the loss or deficiency of assets." *Ottoson–King*, 3 F. App'x at 151. The debtor's explanation must be "reasonable and credible so as to satisfy the court that the creditors have no cause to wonder where the assets went." *Id*. On summary judgment, a debtor does not create a genuine issue of fact where "he has no evidence showing when or how most of the funds in question were exhausted" nor does a "refusal to come forward in good faith to explain where the money went" create a genuine issue of material fact. *Vara v. McDonald (In re McDonald)*, 29

F.4th 817, 823-24 & n.1 (6th Cir. 2022).  Indeed, courts of appeal have required that a debtor's explanation "must be supported by at least some corroboration" and "it must be sufficient to eliminate the need for any *Thomas*, 1987 WL 37635, at *2 (holding that,"[w]ithout a valid record of his financial transactions, the debtor is asking the court and creditors to believe his unverified story" and that "[a] debtor who fails to produce records runs a substantial risk that a bankruptcy judge may deny his petition for discharge"); *see also Ottoson-King*, 3 F. App'x at 151 ("The failure to offer documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets may justify the denial of a discharge pursuant to Section 727(a)(5).").  That is, Section 727(a)(5) "requires a *satisfactory* explanation" by the debtor, which requires more than vague, indefinite, or uncorroborated assertions, *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996), or an explanation that "must convince the judge and must not consist of vague and indefinite explanations[,]" *Clayton v. Ferebee (In re Ferebee)*, 2012 WL 506740, at *8 (Bankr. E.D. Va. Feb. 15, 2012).

Here, the Bankruptcy Court found that the United States Trustee met his burden to identify missing assets.  UST438.  Appellant did not dispute in the Bankruptcy Court, nor does he dispute here, that Appellant solicited millions of dollars and that some combination of Appellant, Qidian, and the SPVs were in possession of those funds at one time and that those funds no longer exist in their accounts.  UST294-95 (Appellant's testimony regarding funds); UST63-140 (bankruptcy schedules listing $40 million in unsecured claims); Dkt. 9 at 5 ("Hao solicited funds from individual investors . . . [and] collected quite a bit of money").[8]  Indeed, as the Bankruptcy Court

_____

[8] In the proceeding below and here again on appeal, Appellant argues that there was a genuine issue of material fact regarding evidence of lost assets given the United States Trustee's responses to certain interrogatories.  Dkt. 9 at 5 n. 4.  Although the United States Trustee's responses to the interrogatories are not a model of clarity and fail to adequately respond to the questions posed, the United States Trustee relies on Appellant's own statements in his bankruptcy

noted, Appellant's schedules listed $40 million in unsecured claims and over $12 million in claims had been filed in the case as of May 8, 2023.  UST426.  Based on the records before the Bankruptcy Court, there was an undisputed deficiency of assets: Appellant's bankruptcy papers show assets worth just $105,640 (UST178-84), which is wholly inconsistent with the roughly $40 million in unsecured claims listed in his sworn schedules (UST190).[9]  Thus, this Court agrees, on its *de novo* review, that the United States Trustee met its initial burden of establishing a loss and that there are no genuine issues of material fact that would preclude the Bankruptcy Court's conclusion in this regard.[10]

---

schedules to establish the loss.  Dkt. 5-15.  Moreover, other responses in the interrogatories make clear that the "millions of dollars" alleged in the adversary complaint and pursued by the United States Trustee is based on "Debtor's own statement of his total liabilities."  *Id*.  There is also no evidence in the record that Appellant filed any discovery motion with the Bankruptcy Court seeking to compel more responsive answers.

Appellant argues that, based upon the interrogatory responses, the Bankruptcy Court failed to acknowledge that "the Trustee was no longer proceeding upon a theory that loan proceeds had been lost."  Dkt. 9 at 5 n.1.  But the motion for summary judgment made clear that the Trustee was still proceeding based on the millions of dollars of liabilities listed by Appellant and the millions of dollars in claims by the unsecured creditors.  UST229.  Accordingly, there is no confusion as to the basis on which the Trustee was proceeding and this argument does not present a basis on which to reverse the Bankruptcy Court.

[9] Appellant attempts to argue that he did not receive those funds, but he never disclaims his own sworn bankruptcy schedules.  Thus, the Court is left with a fundamental question: if the $40 million in unsecured claims are investments in Qidian and do not represent funds received by Appellant, why did Appellant list them as liabilities in his bankruptcy schedules?  The loss claimed by the United States Trustee is based on Appellant's own sworn statements and Appellant never grapples with how he can argue that the losses are attributable to Qidian when he has sworn that they represent liabilities as to him in the bankruptcy.

[10] Although Appellant did raised the issue below regarding whether the investor funds are attributable to Appellant, he has not made or developed such an argument on appeal (nor is it one of the issues that Appellant highlighted on appeal), and it is therefore waived.  *See Steve & Sons, Inc*., 988 F.3d at 727.  Nonetheless, it is worth noting that courts recognize that the diminution of assets from wholly owned businesses can qualify as a lost asset under § 727(a)(5).  *See, e.g.*, *In re Beatty*, 583 B.R. 128, 140-41 (Bankr. N.D. Ohio Jan. 5, 2018) (denying discharge under § 727(a)(5) where debtor failed to satisfactorily explain the disposition of $264,130 withdrawn

Following the shifting of the burden under the *Ottoson–King* standard, Appellant relies on two theories to establish an explanation for the loss identified by the United States Trustee: (i) that the "money went where it was supposed to go"; and (ii) that he was never asked to provide an explanation. Dkt. 9 at 5-6 & n.5. For the first premise, that "the money went where it was supposed to go," Appellant cites to "Docket Entry 30 @ p. 20 [¶ 2]." Dkt. 9 at 5. A review of the Bankruptcy Court adversary proceeding docket reveals that Docket Entry 30 is the Bankruptcy Opinion. *See Fitzgerald v. Hao*, No. 22-1095, docket (Bankr. E.D. Va.). Although the Bankruptcy Opinion is indeed twenty pages, page 20 of the Bankruptcy Opinion only provides that copies of that opinion should be sent to counsel and to Appellant. UST442. This argument therefore fails to establish that there were genuine issues of material fact regarding whether the investor funds were "lost" assets. From a close review of the context, and the best interpretation of Appellant's argument in this regard, one can perhaps infer that Appellant was referring to the Findings of Fact and Conclusions of Law issued by the Bankruptcy Court when converting the bankruptcy from a Chapter 11 proceeding to a Chapter 7 proceeding or to the undisputed facts in the Bankruptcy Opinion. Dkt. 9 at 5 (arguing "[b]ased on this finding of fact by the Bankruptcy Court . . . ."). In both the Findings of Fact and Conclusions of Law and the Bankruptcy Opinion, the Bankruptcy Court found: "The SPV's made mezzanine funding loans to various real estate projects. The largest of the SPV's invested in a real estate project in Miami, which suffered a foreclosure on its property by the senior mortgage lender, resulting in a loss of the SPV investors' money." UST377; UST424. But Appellant attempts to force this generalized statement of Appellant's business model

---

from the accounts of his wholly owned business entities); *In re Burrik*, 459 B.R. 881, 895 (Bankr. W.D. Pa. 2011) (denying discharge under § 727(a)(5) where the debtor failed to satisfactorily explain the disposition of $293,534 in artwork allegedly sold by his wholly owned art galleries); *Spirk v. Sullivan*, 2003 WL 22048077, at *6-7 (N.D. Ill. Aug. 28, 2003) (affirming denial of discharge for an individual debtor based on assets missing from wholly owned business).

suggests far too much.  That some of the investors' funds may have been invested in the Metronomics project in Miami does not establish that *all* of the investor assets listed in the bankruptcy schedules or claimed by the unsecured creditors were invested in that project.  This does not create a genuine dispute of material fact as to whether there was a loss or whether the money went were it was intended to go.  *In re Simmons,* 810 F.3d at 860; *In re D'Agnese*, 86 F.3d at 734.

Indeed, despite making this generalized statement in its recitation of facts, the Bankruptcy Court itself found that Appellant's Metronomics explanation was too "vague" because it "is unknown how much was invested in Metronomics, when it was invested, and what returns if any were paid to Qidian or the SPV's during the life of the project."  UST439.  Moreover, the Bankruptcy Court noted a discrepancy between what Appellant claims are his unsecured liabilities (of approximately $40 million) and what Metronimics – in its own bankruptcy in Florida – claimed Qidian was owed (approximately $50 million).  *Id*.  Counsel for Appellant and Appellant himself in arguments and testimony before the Bankruptcy Court proposed entirely differently numbers for the investment in Metronomics.  UST480 (counsel for appellant suggesting that the investment was $35-36 million); UST323 (Appellant testifying that the investment was $35-$36 million).  Appellant's own argument in his brief is similarly vague, without reference to specific figures, and without citation to any evidence in the record: "at this point, we know that Qidian collected *quite a bit of money*, and we know what Qidian did with the money (it was paid over to the developers and lost as a result of the foreclosure of the Miami project)."  Dkt. 9 at 5 (emphasis added).  Additionally, the Bankruptcy Court found – and Appellant does not dispute this finding – that "[n]ot all of the investors' money went into the Metronomics project" and that, "[o]ther than the Metronomics project, the Debtor did not identify any of the other projects or what became of the

investors' money on those projects."  UST438.  Again, the lack of record evidence regarding how much, when, and where demonstrates that there no genuine issue of material fact relevant to the Bankruptcy Court's conclusion that Appellant has failed to provide a *satisfactory* explanation.  *See Lowe's of Va., Inc. v. Thomas (In re Thomas)*, No. 86-3560, 1987 WL 37635, at *2 (4th Cir. June 3, 1987) ("To convince the judge, the debtor's explanation 'must consist of more than . . . a vague, indefinite, and uncorroborated hodgepodge of financial transactions.'"); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984) ("Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory.").

Appellant also argues that there is a disputed issue of fact as to whether Appellant was ever asked to provide records regarding his transactions.  Dkt. 9 at 6.  In particular, Appellant argues that, because "there is no record[] of a specific question posed to Mr. Hao," there "is no basis for the Bankruptcy Court to have found that there was no satisfactory explanation."  *Id*.  But this argument misunderstands the nature of his burden under § 727(a)(5).  The Bankruptcy Court did not rely on or resolve any dispute about whether Appellant was asked to provide any specific records (and the Court similarly does not need to address any such dispute).  Rather, the Bankruptcy Court relied on the undisputed fact, established by the Trustee Declarations, that, after multiple meetings of the creditors and multiple amendments to the bankruptcy schedules, the Trustees and creditors "did not have a clear picture of Debtor's finances or the use and disposition of millions of dollars in the investors funds."  UST440; UST392-397.  Indeed, in his opposition to summary judgment, Appellant admitted that "any claim by any person (Meiburger and Shortall) that they cannot trace the assets handled by Qidian or the SPV's is true."  UST412.[11]  Finally,

----

[11] Appellant claims it is true "only to the extent that these persons never reviewed any documents which would in fact show the precise treatment and uses of those assets."  UST412.

Appellant has represented that he does not have many documents tracking the spending of investor funds. UST424 (recounting that Appellant represented that "there is no Balance Sheet, Statement of Operations, or Cash-Flow Statement").

Under § 727(a)(5), the burden is on Appellant to explain regardless of whether any specific question is asked. Appellant cites no case law establishing that a specific question is required.[12] Moreover, the Trustee Declarations establish that, even when Appellant turned information over to the Trustee, the information received "only engendered more questions" and could not "be relied on in administering the bankruptcy case." UST396-97. Additionally, in his own declaration, Appellant concedes that Ms. Meiburger did ask Appellant questions. UST417. Thus, the record establishes that Appellant was questioned about his finances and that the Trustee was unsatisfied with his responses because it left the Trustee: (i) unable to "untangle the financial relationship between these entities" and their "potential value to the estate"; (ii) unable to ascertain the "financial activity over which the Debtor had sole control"; (iii) unable to "ascertain what happened to all the creditors' money and account for the losses"; and (iv) unable to "develop an accurate picture of the Debtor's financial affairs." UST392-97. Nonetheless, under § 727(a)(5), once a loss or deficit is identified, the burden is not on the Trustee but on Appellant to provide a satisfactory explanation. *Ottoson–King*, 3 F. App'x at 151. Indeed, the Eleventh Circuit has

---

But the burden is on Appellant to come forward with an explanation that relieves the creditors of the necessity to speculate. *In re Simmons*, 810 F.3d at 860.

[12] It is perhaps a bit ironic that Appellant is seeking to require the United States Trustee to provide a specific list of questions to which Appellant provided an inadequate answer when Appellant seeks to rely on his own unsupported and vague representation that the money went where it was supposed to go. It is clear from the Trustee Declarations that Appellant was requested to provide information related to his financial transactions so that the Trustee could determine where the creditors' funds – as listed by Appellant in his schedules – went and that the Trustees were unable to ascertain the disposition of those funds based on his responses.

rejected that the burden is on the creditor to ask specific questions. *See Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246 (11th Cir. 1995) (holding that § 727(a)(5) "does not explicitly require a creditor to call upon a debtor to explain a loss of assets *prior* to filing an adversary proceeding" (emphasis in original)). Rather, the Eleventh Circuit noted that § 727(a)(5) "requires only that the debtor failed to explain a loss of assets 'before the determination of denial of discharge under this paragraph.'" *Id*. Even where documentation has been provided, courts have recognized that neither a creditor nor the Court is required to "act as sleuth, ferreting through a debtor's records in an attempt to trace the loss of assets or reconstruct the debtor's financial history," because, once the burden shifts, it is the obligation of the debtor to "compile the mass of relevant documents into a concise explanation that explained discrepancies and filled in the gaps." *Spirk v. Sullivan*, 2003 WL 22048077, at *5 (N.D. Ill. Aug. 28, 2003). And other courts routinely recognize that, to provide a satisfactory explanation, a debtor must come forward with corroboration and documentation.[13]

---

[13] *See Thomas*, 1987 WL 37635, at *2 (holding that,"[w]ithout a valid record of his financial transactions, the debtor is asking the court and creditors to believe his unverified story" and that "[a] debtor who fails to produce records runs a substantial risk that a bankruptcy judge may deny his petition for discharge"); *see also Ottoson-King*, 3 F. App'x at 151 ("The failure to offer documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets may justify the denial of a discharge pursuant to Section 727(a)(5)."); *In re Simmons*, 810 F.3d at 860 (holding the debtor's explanation must be supported by at least some corroboration); *Baker v. Reed (In re Reed)*, 310 B.R. 363, 372 (Bankr. N.D. Ohio 2004)( "[U]nsubstantiated explanations will not suffice for purposes of § 727(a)(5); corroborating evidence, whether documentary or testimonial, must be offered."); *PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 116 (Bankr. W.D. Pa. 2000) (holding that an explanation "consisting of mere generalities and founded upon nothing by way of verification or affirmation in books, records or otherwise is not satisfactory").

Appellant's apparent acknowledgment that he has chosen not to provide information, that he "claims he has,"[14] and instead rely on an argument that no one asked is confounding.  Dkt. 9 at 6.  Appellant claims that he has these documents and yet at no point in the adversary proceeding, up to and including losing at summary judgment, did he choose to provide them.  Nor did Appellant, after recognizing that he was unsuccessful  on summary judgment, move for reconsideration and attach the documents that show the disposition of the funds in question.

In sum, there are no material disputes of fact that precluded summary judgment and the Bankruptcy Court appropriately granted summary judgment in favor of the United States Trustee and denied Appellant a discharge pursuant to § 727(a)(5).

## C. Fifth Amendment

Appellant's final argument is that the Bankruptcy Court inappropriately went outside of the summary judgment record when the Bankruptcy Court took judicial notice of Appellant's invocation of his Fifth Amendment privilege when testifying in a separate adversary proceeding. Dkt. 9 at 7.  Appellant, in reliance on Federal Rule of Civil Procedure 56(f)(2), argues that he was entitled to notice before the Bankruptcy Court considered his testimony in the other adversary proceeding, because it was not raised by the parties.  *Id*.[15]  The taking of judicial notice is an evidentiary ruling reviewed for an abuse of discretion.  *See Couch v. Clarke*, 782 F. App'x 290,

---

[14] It is interesting that in the brief, Appellant's counsel chooses to assert that "Hao *claims* that he has the banking records" rather than to more straightforwardly assert that Appellant "has the banking records."  Dkt. 9 at 6 (emphasis added).  And the phrasing makes one wonder why counsel would avoid making such an affirmative representation.

[15] Appellant does not dispute the Bankruptcy Court was permitted to draw a negative inference from his invocation of the Fifth Amendment in response to questioning, but merely objects to his lack of notice.

291 (4th Cir. 2019) ("We review evidentiary rulings, such as a court's taking judicial notice, for abuse of discretion.").

As judges within this District have repeatedly held, "[j]udicial notice is particularly applicable to a court's own records of prior litigation which is closely related to the matter under consideration." *Etlin v. Unknown*, 2009 WL 3762304, at *1 (E.D. Va. Nov. 9, 2009).  Federal Rule of Evidence 201 expressly permits that a court "may take judicial notice on its own . . . at any stage of the proceeding." Fed. R. Evid. 201(c)(1), (d).  A court make take judicial notice "at any stage of the proceeding." *Id*. 201(e).  Moreover, "[t]he court's taking of judicial notice before notifying a party is not alone improper, as the rule specifically contemplates such a possibility but allows the party an opportunity to be heard if the party so requests." *Ctr. For Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 423 (5th Cir. 2013).  Indeed, the Commentary to Rule 201 recognizes that a party adversely affected by a judicially noticed fact "may have no advance notice at all" and that the remedy for this lack of notice, is "a request made after the fact." Fed. R. Evid. 201(e), Adv. Cmte. Notes.

Here, the record does not demonstrate that Appellant requested an opportunity to be heard. Instead, he appealed.  Courts recognize that where parties do not seek an opportunity to be heard, there is no reversible error. *See, e.g.*, *Ball v. LeBlanc*, 792 F.3d 584, 591-92 (5th Cir. 2015).  Thus, under Rule 201, Appellant failed to request an opportunity be heard and there is no error. Appellant relies on Rule 56(f)(2), which does require advance notice if a court were to grant the motion for summary judgment on "grounds not raised by a party." Fed. R. Civ. P. 56(f)(2).  Here, however, the Bankruptcy Court relied on the grounds raised by the United States Trustee, that Appellant failed to give a satisfactory explanation for the missing assets, but supported its conclusion based on the facts raised by the Trustee as well as the Bankruptcy Court's awareness

that Appellant had invoked his Fifth Amendment rights under related questioning in another matter.  UST439-40.  Accordingly, Rule 56(f)(2) does not apply to these circumstances because there was no new "ground" on which the motion was granted.  Additionally, this Court could find no cases applying the advance notice requirements of Rule 56(f)(2) to the taking of judicial notice and Appellant cited none.  Indeed, requiring advance notice would appear to contradict the clear language of Rule 201.  This Court finds that there was no abuse of discretion in declining to provide Appellant with advance notice that the Bankruptcy Court would take judicial notice of Appellant's invocation of the Fifth Amendment because such notice is not required under Rule 201.  That Appellant chose not to avail himself of an opportunity to be heard before the Bankruptcy Court after the fact – as anticipated by Rule 201 – does not establish that the Bankruptcy Court abused its discretion.

Assuming *arguendo* that the Bankruptcy Court erred when it took judicial notice of Appellant's invocation of the Fifth Amendment in a related adversary proceeding without advance notice, such error is harmless.  *See Snoeyenbos v. Curtis*, 60 F. 4th 723, 733 (4th Cir. 2023) (noting that "[a]ny abuse of discretion is reviewed for harmless error" and that "[a]n error is harmless when this Court can 'say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors'").  To begin with, Appellant does not argue that he was prejudiced in any way by the Bankruptcy Court's taking of judicial notice nor does Appellant identify any additional argument that he would have made had he been aware that the Bankruptcy Court would take such judicial notice.  Dkt. 9 at 7.[16]  Thus, Appellant's failure to seek an opportunity to be heard and Appellant's

---

[16] Courts have held that both the failure to provide an opportunity to be heard pursuant to Rule 201 and the failure to provide advance notice pursuant to Rule 56(f)(2) may be considered harmless error if there is no prejudice to the affected party.  *See Ball*, 792 F.3d at 591-92 (holding

failure to identify any arguments that Appellant would have made had the Bankruptcy Court given him advance notice demonstrates that there was no prejudice to Appellant resulting from his lack of advance notice of the Bankruptcy Court taking judicial notice of his invocation of his Fifth Amendment privilege.

Moreover, Appellant's invocation of his Fifth Amendment privilege was simply one basis cited by the Bankruptcy Court to support the conclusion that the Bankruptcy Court had already reached regarding the unsatisfactory nature of Appellant's explanation. Before ever discussing Appellant's invocation of his Fifth Amendment privilege, the Bankruptcy Court had already determined that Appellant "has not provided a satisfactory explanation for the loss of funds" because: (i) "[n]ot all of the investors' money went into the Metronomics project"; (ii) "[o]ther than the Metronomics project, the Debtor did not identify any other projects or what became of the investors' money in those projects"; and (iii) with respect to the Metronomics project, the Bankruptcy Court "has no idea" which loss numbers were accurate. UST438-39. It was only after reaching that decision that the Bankruptcy Court discussed Appellant's "refus[al] to answer any questions related to the use of the investors' funds to pay other investors" based upon his invocation of his Fifth Amendment privilege. UST439. And, in the paragraph where the Bankruptcy Court reached its ultimate conclusion to grant the motion for summary judgment, the

---

that "[t]he judicial notice objections fail" where "the State's explanation of prejudice is vague, cursory, and unpersuasive"); *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1150 (10th Cir. 2017) (holding, with respect to Rule 56(f)(2), that "even if such notice is lacking, we will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice"); *UnitedHealth Grp. Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 866 (8th Cir. 2017) (holding, with respect to Rule 56(f)(2), that "[w]hether or not a party receives advance notice that the court might act *sua sponte* . . . any objection to that procedure is waived if the party does not at least object *after* the court enters its orders"); *Atkins v. Salazar*, 677 F.3d 667, 678 (5th Cir. 2011) ("We review for harmless error a district court's improper entry of summary judgment *sua sponte* without notice.").

Bankruptcy Court does not mention Appellant's invocation of his Fifth Amendment privilege. UST440. The Court therefore finds any purported error harmless, because the Court can "say with fair assurance . . . that the judgment was not substantially swayed by the [alleged] errors." *Snoeyenbos*, 60 F. 4th at 733.

IV. CONCLUSION

In sum, after a review of the alleged errors asserted by Appellant, this Court finds: (i) that the Bankruptcy Court did not abuse its discretion in denying the motion to strike; (ii) that, on *de novo* review, the Bankruptcy Court appropriately granted summary judgment on the Trustee's § 727(a)(5) claim; (iii) that the Bankruptcy Court did not abuse its discretion by failing to give advance notice that it would take judicial notice of Appellant's invocation of his Fifth Amendment privilege in a related adversary privilege; and (iv) that, even if the Bankruptcy Court did err in failing to give Appellant advance notice that it would take judicial notice of that fact, the purported error was harmless. Accordingly, for the foregoing reasons, the judgment of the Bankruptcy Court is AFFIRMED; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to administratively close this action and place it among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
March 5, 2024

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge